## MARY A. GREEN

### v.

## JOHN F. BIRCH.

1. PARENT AND CHILD—LIABILITY FOR SUPPORT OF CHILD.—In order to bind a parent for necessaries furnished his infant child by a third person, either an express promise, or circumstances from which a promise can be inferred, must be shown.

2. VOLUNTARY SUPPORT OF CHILD BY A THIRD PERSON.—Appellee and wife assumed the care and support of the minor child of appellant's testator, without any express agreement as to pay therefor. Afterwards, by a written acknowledgment they agreed not to charge for support of such child unless the will then made by the father of the child "should be broken." The widow of the testator renounced the provisions of the will. *Held*, that by such renunciation the will was not broken as contemplated by the agreement of appellees, and it furnished no grounds for a repudiation by them of their agreement, or to establish a claim against the estate of the testator.

3. DOWER INTEREST.—The renunciation by the widow affected the provisions of the will as regards appellee only to the extent of a dower interest in eight acres, parcel of a forty acre tract devised to the minor child in question, and as to the eight acres the widow made no claim. *Held*, that the will was unbroken, even as to the eight acres, for by it the fee in them passed to the devisee and on the determination of the life estate the whole estate would be held by him; that the statutory right of renunciation being an existing law at the time of the execution of the agreement, it would be considered as entering into the agreement, and in contemplation of the parties in making it.

4. WILL—NOT BROKEN BY WIDOW'S RENUNCIATION.—A renunciation by the testator's widow of the provision of the will in her behalf, in pursuance of the statute, does not destroy the effect of the will, nor render it an inoperative instrument except so far as the widow's rights are affected.

APPEAL from the Circuit Court of Moultrie county.

Mr. ANTHONY THORNTON and Messrs. A. C. & I. J. MOUSER, for appellant; that no recovery can be had except upon proof of a contract express or implied, cited Broughton v. Smart, 59 Ill. 440; Miller v. Miller, 16 Ill. 296; Hunt v. Thompson, 3 Scam. 179.

There can be no implied contract unless there was a legal duty to be performed: Metcalf on Contracts, 4.

The right to the custody of the child and the obligation to support go together: Parsons on Contract, 309.

The right of renunciation by the widow entered into and became a part of the agreement: Matthias v. Cook, 31 Ill. 84.

The will may be considered in determining the meaning of the agreement: Stacy v. Randall, 17 Ill. 467; 2 Parsons on Contracts 503.

Upon the question of revocation of the will: Rev. Stat. Chap. 148, § 17.

Mr. A. B. BUNN, for appellee; that a promise on the part of the parent to pay for necessaries furnished his minor child, will be inferred, cited 1 Parsons on Contracts, 306; *In re* Ryder, 11 Paige, 185; Van Valkenberg v. Watson, 13 Johns. 480; Pidgen v. Cram, 8 N. H. 350.

That the agreement should have a reasonable interpretation, and that it was annulled by the renunciation of the widow: Wells v. Carpenter, 65 Ill. 447; Wilson v. Marlow, 66. Ill 385.

DAVIS, J.   This was a claim filed in the County Court of Moultrie county by appellee, against the estate of Sowyel M. Green, deceased, to recover for the board of Osea W. Green, a minor son of the deceased, from July 1, 1865, to July 1, 1876, and for care and attention bestowed upon him during same time, and for medical attendance and clothing furnished him, amounting to $2,550.00.

The claim was defeated in the County Court, and on appeal to the Circuit Court appellee recovered a judgment against the estate for $662.75, to reverse which appellant has taken this appeal.

From the record it appears that the mother of Osea died in

the year 1865, and on the day of her funeral the wife of appellee, who had no children of her own, and who was the boy's aunt, proposed to her husband to take the boy, who was then about five years old, home with them. To this appellee assented, and the boy was taken to their home, where he has since remained, except when at the deaf and dumb asylum at Jacksonville.

Nothing was then or at any other time said by appellee to Sowyel M. Green about charging for keeping the boy, but he was received as a member of the family—the father furnishing to appellee from time to time flour, meat, corn, money, etc.

Afterwards, appellee and his wife executed the following written instrument:

"MATTOON, Ill., June 20, 1873.

"This is to certify that, whereas, S. M. Green, and his wife, Mary Green, of the county of Moultrie and State of Illinois, have made their last will and testament; and whereas, I, the undersigned, have under my charge and care to raise until he becomes of age, O. W. Green, now minor son of the above S. M. and Mary Green: now if the will so made shall not be broken, then I am to have nothing for keeping the said O. W. Green. If broken, then to have pay for keeping same.

"(Signed) JOHN F. BIRCH.

"LOUISA B. BIRCH."

The will above referred to had been executed and its contents were known to appellee when said written instrument was given to Green. By the will so executed the testator made the following disposition of his estate:

To his wife, Mary A. Green, he gave and bequeathed all his personal property remaining after the payment of his debts and funeral expenses. He also devised to her during her life and so long as she should remain a widow, eighty acres of land, which on her death or marriage should go to three of his children, in fee, viz: Cassius, Montie and Effie Green. He also devised to her to hold during her natural life, two lots in the town of Sullivan, and on her death to be divided among his children, Cassius, Montie, Effie and Osea Green.

To Osea W. Green he gave and devised forty acres of land.

It further appears from the record that the testator died on the 29th of June, 1875, and that his said will was duly proved and admitted to record by the County Court of Moultrie county; and afterwards and within the time prescribed by law, Mary A. Green, his widow, filed her written renunciation of all benefit of any devise or other provision made to her by said will, and elected to take in lieu thereof her dower and legal share in the estate of her husband, and in certain proceedings commenced for that purpose, eight acres of the forty devised in said will to Osea W. Green were assigned to said Mary A. Green as a part of her dower in the real estate of her husband.

In Hunt v. Thompson, 3 Scammon, 180, it was held that either an express promise or circumstances from which a promise by the father can be inferred, must be shown to bind the parent for necessaries furnished his infant child by a third person.

In this case no express contract is shown to have been entered into until the 20th June, 1873, and no circumstances are shown from which a promise from the father can be inferred to pay for the keeping of his child. On the contrary, the circumstances show pretty clearly that the taking of the child to the home of the appellee was entirely voluntary and was more for the happiness of himself and wife and of the child than for the convenience of the deceased or with the expectation of receiving any compensation for his trouble. Appellee and his wife were childless. The boy was the youngest child of a deceased sister. He was deaf and dumb, and the relationship existing between them and his unfortunate condition were ties which bound them together, and their conduct from the time they assumed control over him until the written contract of June 20, 1873, was made, and which, when made, was made solely for his benefit, shows that no selfish motives actuated them, but that love for the child and their deceased sister alone controlled them.

It only remains to be determined what are the rights of the parties under the express contract of June 20, 1873.

The will of Green having been executed, and its terms being satisfactory to the appellee, it was agreed that if the will should

not be broken, appellee should have no compensation for keeping the boy, but if the will should be broken, then appellee should receive compensation.    In this agreement there is no ambiguity.    It is plain and easily understood.    If the will has been broken, appellee is entitled to recover.    If it has not, he has no claim whatever.

Appellee claims that by the act of the widow in renouncing under the will and electing to take her dower under the statute, the will has been broken.    The law giving this right to the widow existed at the time of the execution of the will and contract, and hence it entered into and became a part of the contract, and the exercise of that right cannot be considered as a breaking of the will within the meaning of the contract    Matthias v. Cook, 31 Ill. 83.

But were the rule otherwise we do not consider that the will was broken by such renunciation.    The will still remains as it was proven and recorded—the last will and testament of the testator, in full force and effect, and the estate, real and personal, passes by it as effectually as it would and did before the renunciation.

By the will forty acres of land in fee simple, and an estate in some town lots, were devised to Osea W. Green.    This will is the evidence of his title, and under it he claims and now holds and enjoys the land devised.    The effect of the renunciation in this case is not to break the will, but to charge the forty acres devised to Osea with the life estate of the widow in eight acres of the same, and to these eight acres the widow makes no claim, and the devisee has been and is now in the quiet and peaceable possession of the same, but if he were not, the will would still be unbroken, even as to the eight acres for, by it the fee in them passed to the devisee, and on the determination of the life estate of the widow, the whole estate would be held and enjoyed by him.

The judgment of the court below must be reversed.

Judgment reversed.