## McKENNEY v. UNITED STATES.
### No. J-667.

Court of Claims.
May 4, 1931.

This suit is for the recovery of interest under section 1324 (a) of the Revenue Act of 1921 (42 Stat. 316), on an overpayment of $101,031.27 allowed and refunded by the Commissioner of Internal Revenue for 1917.

The tax refunded constituted an overpayment resulting from special assessment of the profits under the provisions of section 210 of the Revenue Act of 1917 (40 Stat. 307). It was not paid under protest, but $5,530.94 of the refund was paid as the result of an

additional assessment. The question is whether the plaintiffs filed a claim for refund.

### Special Findings of Fact

1. Plaintiffs are and were throughout the taxable year 1917 members composing the partnership of H. P. McKenney & Company engaged in the business of woolen commission merchants in New York City. March 30, 1918, the partnership filed income and excess profits tax returns for the calendar year 1917 showing the excess profits tax due thereon to be $140,539.12 which was paid June 6, 1918. After an examination and audit of the returns, based upon a revenue agent's report, the Commissioner of Internal Revenue on July 29, 1920, notified the partnership that he had determined a deficiency of $5,530.94. An additional assessment of this amount was made October 11, 1920, and was paid by the partnership November 19, 1920.

2. November 24, 1920, the partnership filed a revised income tax return for 1917, together with a claim for the refund of $4,879.44 of the additional assessment of excess profits tax for 1917, together with a protest thereon dated November 23, 1920. The basis of this claim for refund was that the commissioner had erroneously reduced the salaries of the four partners in the total amount of $6,000.

3. May 2, 1922, the partnership filed with the commissioner an application for the determination and assessment of its excess profits tax for 1917 in accordance with the provisions of section 210 of the Revenue Act of October 3, 1917, and articles 18, 24, and 52 of Regulations 41.

After setting forth in detail and at length the reasons and grounds in support of the application for special assessment, and the names of six concerns engaged in a like or similar business to that of the partnership which it believed should be used as comparatives in the determination of its profits tax, plaintiff stated:

"It is claimed that the foregoing facts as set forth, constitute an abnormal condition, that warrants assessment under section 210 of the Revenue Act of 1917.

"Therefore it becomes, not a question of how much the tax should be reduced, but of determining, in the only statutory manner possible, what the taxpayer's tax should be, and that can only be found by a reference to the representative concerns, engaged in the same business or a similar business.

"An adjustment on the basis as above indicated would appear as follows:

| | |
|---|---|
| Tax assessed | $146,070.06 |
| Tax as corrected | 45,354.15 |
| | |
| Indicating an overassessment of | $100,715.91" |

The entire application for special assessment is attached to the stipulation as Exhibit 4 and is made a part of this finding by reference.

4. The Commissioner of Internal Revenue on October 5, 1922, allowed the application for special assessment and, upon the basis of the statements therein set forth, determined that there had been an overpayment for 1917 of $101,031.27, and notified the partnership by letter, as follows:

"Reference is made to your income and excess-profits tax returns, Forms 1065 and 1102, for the year ended December 31, 1917, and your application for assessment under the provisions of section 210 of the Revenue Act of 1917.

"You are advised that after careful consideration of all the facts, as set forth in statements filed with your returns, and with other data submitted, your case has been given consideration under the provisions of section 210. * * * The audit of your returns * * * indicates an overassessment for the year, summarized and explained, as follows:

| | | |
|---|---|---|
| Total excess profits-tax assessment | | $45,038.29 |
| Tax previously assessed, original | $140,539.12 | |
| Additional assessment | 5,530.44 | |
| | | 146,069.56 |
| | | |
| Indicating an overassessment of | | $101,031.27 |

"The overassessment shown herein will be made the subject of certificates of overassessment, which will reach you in due course through the office of the collector for your district, and will be applied by that official in accordance with section 252 of the Revenue Act of 1921."

5. On November 1, 1922, the commissioner approved the schedule of reductions in tax liability embracing the overassessment above stated, which was transmitted to the collector at New York for his action in accordance with the directions appearing thereon. The

collector complied and, on February 21, 1923, signed and returned the schedule, together with a schedule of refunds and credits showing the overassessment of $101,031.27 to be refundable. March 18, 1923, the commissioner signed the schedule of refunds and credits authorizing the disbursing clerk of the Treasury Department to issue check for the amount shown to be refundable.

6. March 26, 1923, a certificate of overassessment for $101,031.27 stating "An audit of your income tax return for 1917, Forms 1065 and 1102, and examination of related claim (if any), indicates that the amount of tax assessed to you for this year was in excess of the amount due," together with treasury check for $101,031.27, was mailed to the partnership. This certificate of overassessment is attached to the stipulation as Exhibit 5 and is made a part of this finding by reference. The commissioner did not allow, compute, or pay the partnership any interest upon this overpayment.

May 7, 1928, the partnership made request in writing upon the commissioner to compute and allow interest on the overpayment in accordance with existing law, and on July 10, 1928, the commissioner declined to do so, stating that: "The records of this office indicate that the application for special assessment, upon which the allowance was based, was not sworn to nor afterward perfected by a claim for refund on the same basis. Interest, therefore, is not payable on the amount refunded under the provisions of section 1324 (a) of the Revenue Act of 1921 in effect at the time the allowance was made." The partnership further protested this action of the commissioner and demanded payment of interest on the ground that it made a claim for refund in its application for special assessment, in that it set forth with definiteness the tax paid, the correct tax liability, and the amount of overpayment claimed, and the facts in support thereof. On August 30, 1928, the commissioner again refused to allow and pay any interest, advising the plaintiffs in a letter of that date that: "This application did not meet the requirements of Art. 1036 of Regulations 62 with respect to the filing of claims for refund, in that the statements therein contained were not made under oath. * * * It is your contention that this allowance was made upon the basis of an informal claim for special assessment filed May 2, 1922, and that, therefore, interest is payable on the refund in accordance with the provisions of section 1324 (a) of the Revenue Act of 1921. This view of the

matter is, however, contrary to that taken in Law Opinion 1116 (C. B. III–1, pg. 350). Accordingly, it must be held that the refund in this case was made by the commissioner within the five-year period of limitation provided in section 252 of the Revenue Act of 1921, and not as the result of the filing of any allowable claim for refund. No interest is, therefore, payable under section 1324 (a)."

Harry S. Hall, of New York City, for plaintiff.

Lisle A. Smith, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

This suit is for the recovery of interest under section 1324 (a) of the Revenue Act of 1921 upon an overpayment for 1917 of $101,031.27 allowed by the Commissioner of Internal Revenue on March 18, 1923, and refunded by treasury check of March 26, 1923. The question whether plaintiffs are entitled to recover interest upon the refund depends upon whether the statements set forth by the partnership, of which plaintiffs were members, in an application filed with the commissioner May 2, 1922, for determination of the excess profits tax for 1917 in accordance with the provisions of section 210 of the Revenue Act of 1917, which was allowed by the commissioner, were sufficient to constitute a claim for refund within the meaning of section 1324 (a) of the Revenue Act of 1921 entitling plaintiffs to interest on the refund from six months after May 2, 1922, to the date of allowance on March 18, 1923.

The partnership insisted before the Commissioner of Internal Revenue, and insists here, that the document of May 2, 1922, was sufficient to constitute a claim for refund authorizing the payment of interest of the amount of the refund, and that since the commissioner allowed the claim he was required by law to compute and allow interest. The commissioner refused to pay interest on the ground that no formal claim for refund had been filed and that the document of May 2, 1922, did not meet the requirements of article 1036 of Regulations 62 with respect to the filing of claims for refund in that it was not sworn to by the taxpayer. The commissioner gave as a further reason for refusing to pay interest that he allowed and paid the refund within the five-year period of limita-

tion provided in section 252 of the Revenue Act of 1921 and not as the result of the filing of a claim for refund.

We are of opinion from the facts in this case that the plaintiffs are entitled to judgment for interest under section 1324 (a) of the Revenue Act of 1921 upon the refund in question. The document was sufficiently certain to advise the commissioner and to put him upon notice of the grounds of the claim, the facts relied upon in support thereof, and the amount by which the taxpayer claimed that its tax had been overpaid. The taxpayer, with remarkable certainty for a case of this kind, set forth the amount of the correct tax liability and the amount of the overpayment made. The amount by which the taxpayer in this document claimed that the tax had been overpaid differed from the overpayment finally determined by the commissioner by only $315.36. It is clear from the statements made by the commissioner to the partnership in his letter of October 5, 1922, and the certificate of overassessment of March 26, 1923, that he had allowed the claim made and had determined and allowed the overpayment upon the basis of the statements therein set forth. The reason given by the commissioner for his refusal to pay interest, that he had allowed and paid the refund within the period of limitation within which he was authorized to make such allowance and payment, and not as the result of the claim, was contrary to fact because the five-year period within which the commissioner was authorized to allow and pay the refund in this case expired on March 1, 1923, which date was the expiration of the five-year period after the return for 1917 was due. Plaintiffs' income and profits tax returns for the calendar year 1917 were due on March 1, 1918. Section 13 (b) of the Revenue Act of 1916 (39 Stat. 770); section 205 of the excess profits tax act of March 3, 1917 (39 Stat. 1001); and section 211 of the Revenue Act of 1917, approved October 3, 1917 (40 Stat. 307). The refund in this case was allowed by the commissioner March 18, 1923, and was paid March 26, 1923. His only authority for allowing and paying the refund was the claim filed by the partnership. After the commissioner had received, considered, and allowed the claim and paid the refund, it was too late for him to say that because of its informality it was not sufficient to permit the allowance of interest. His allowance and payment of the refund upon the basis of the claim made was within the scope of his authority. There is no suggestion that the allowance and payment of the refund was induced or resulted from fraud or mistake. As was stated by the Supreme Court in Bonwit Teller & Co. v. United States, 51 S. Ct. 395, 397, 75 L. Ed. ——, decided April 13, 1931: "The facts found disclose that there was a reasonable or substantial compliance with the amendment. [The statute.] The Commissioner within the time allowed was advised of the grounds on which plaintiff's right to refund rested, and was not misled or deceived by plaintiff's failure to file formal claim and was fully warranted in holding that the waiver and earlier documents were sufficient. Tucker v. Alexander, 275 U. S. 228, 231, 48 S. Ct. 45, 72 L. Ed. 253." The document in this case claimed a refund with as great if not greater certainty than the documents in the Bonwit Teller & Co. Case and, as pointed out in that case by the court: "No statute provides for review of the Commissioner's determinations in favor of taxpayers when made within the scope of his authority. Such rulings are entitled to much weight."

The fact that the question here is a suit for interest, rather than for a portion of the overpayment allowed but not paid, does not change the situation. A claim that is sufficient for one purpose is sufficient for another. Having allowed and paid the refund upon the basis of the statements and claims set forth in the application, which he could not have done without treating the document as a claim for refund, it was thereafter too late for him to change his opinion about it and refuse to pay the plaintiffs the interest which the statute makes mandatory as the result of his allowance of the claim. See Lasher v. United States, 65 Ct. Cl. 295. The facts in this case distinguish it from Stauffer, Eshleman & Co., Ltd., v. United States, 66 Ct. Cl. 277, and Maas & Waldstein Co. v. United States, 37 F.(2d) 196, 68 Ct. Cl. 613.

The last-mentioned case turned upon the question whether a request for special assessment without any claim or showing that there had been an overpayment constituted such a protest as would entitle the plaintiffs to interest under the 1921 act. The opinion indicates that this court would be without jurisdiction of a suit for interest upon a refund allowed by the commissioner as a result of special assessment as to do so would be to change the amount found by the commissioner, and, further, that section 1324 (a) does not apply to a request for special assessment, but only to claims where the action of the commissioner is subject to review by the

courts. These statements went beyond the necessities of that case, since the court had already decided that the request for special assessment did not constitute a protest. The interest provisions of the statute are general and apply to all refunds falling within their terms. They are mandatory and repose no discretion in the commissioner beyond the determination of the fact whether the tax was paid under protest, or pursuant to an additional assessment, or whether a claim for refund or credit was filed; a fact which does not require the exercise of any discretion or knowledge of accountancy but only the determination of an ordinary fact concerning which the courts constantly review the decisions of administrative officers. The matter of interest in no way enters into the amount of profits tax that the commissioner may determine under the special assessment provi- sions. Once he has made a computation of the tax under the special assessment provi- sions, the discretionary authority vested in him, which the courts can not review, is at an end. The question whether the taxpayer is entitled to interest on an overpayment re- sulting from the computation of tax under the special assessment provisions is as much within the jurisdiction of the courts as is the question whether a taxpayer is entitled to interest on an overpayment resulting from any other cause.

Plaintiffs are entitled to judgment for $2,942.57, representing interest at 6 per cent. on $5,530.94 from November 19, 1920, to March 18, 1923, and on $95,500.33 from No- vember 2, 1922, to March 18, 1923. Judg- ment in favor of plaintiffs for $2,942.57 will be entered. It is so ordered.